**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

SHONGA JONES and JOSE RIOS,
on behalf of themselves and others similarly
situated,

    Plaintiffs,

v.

CAPSTONE LOGISTICS, LLC
(a/k/a Capstone Logistics of GA, LLC),

    Defendant.

Civil Action No.
1:19-cv-03120-SDG

**ORDER**

This matter is before the Court on Defendant Capstone Logistics, LLC's motion to dismiss [ECF 22]. For the following reasons, Capstone's motion is **DENIED**.

**I.   BACKGROUND**

The following facts are treated as true for the purposes of this motion.[1] Capstone is a warehouse logistics business that employs unloaders (also referred

---

[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

to as "lumpers") at locations throughout the United States.[2] Plaintiff Shonga Jones was employed by Capstone as a loader at its Groveport, Ohio warehouse.[3] Plaintiff Jose Rios was employed as a loader at Capstone's Rock Island, Illinois warehouse.[4]

Plaintiffs' job duties included, but were not limited to, unloading trailers and trucks, storing unloaded items, organizing pallets, and cleaning the warehouse and trailers.[5] During Plaintiffs' employment, they were compensated as piece-rate workers.[6] Rather than receiving a fixed hourly wage, Plaintiffs were paid based on the number of trailers and trucks unloaded during the workday.[7] To record their daily hours, Plaintiffs clocked in at the beginning of a workday and clocked out at its conclusion.[8] In addition to these tasks, Plaintiffs allege they were required to perform certain "nonproductive" tasks—such as waiting for a new

---

[2]   ECF 1, ¶ 1.

[3]   *Id.* ¶¶ 12–14.

[4]   *Id.* ¶¶ 16–18.

[5]   *Id.* ¶ 39.

[6]   *Id.* ¶ 43.

[7]   *Id.*

[8]   *Id.* ¶ 42.

truck or trailer to be docked at the warehouse, cleaning their work area, and cleaning trailers—for which they received no compensation.[9]

As part of their employment, Plaintiffs allege they routinely worked in excess of 40 hours per workweek.[10] Plaintiffs concede they were paid some overtime wages for those hours.[11] However, they allege Capstone improperly calculated their rate of pay and, thus, undercompensated them for their overtime hours.[12] Specifically, Plaintiffs allege Capstone miscalculated their overtime wages by combining both productive (paid) and nonproductive (unpaid) hours, which diluted their overtime rate and resulted in the underpayment of overtime compensation.[13] According to Plaintiffs, their overtimes wages should have been calculated by dividing all piece-wages solely by the productive hours worked during the week.[14]

On April 18, 2019, Plaintiffs filed their putative collective action Complaint in the United States District Court for the Southern District of Ohio, asserting a

---

[9]   *Id.* ¶ 44.

[10]  *Id.* ¶ 41.

[11]  *Id.* ¶ 45.

[12]  *Id.* ¶¶ 45–46.

[13]  *Id.* ¶ 7.

[14]  *Id.* ¶ 64.

claim under the Fair Labor Standards Act ("FLSA") against Capstone.[15] Plaintiffs seek to represent all current and former Capstone loaders who were paid on a piece-rate basis, but not fully compensated for their overtime hours.[16] On June 10, 2019, Capstone filed the instant motion to dismiss, or in the alternative, transfer of venue to this Court.[17] On July 9, 2019, the Southern District of Ohio granted Capstone's request to transfer venue to this Court.[18] The Ohio court expressly declined to take a position on Capstone's pending motion to dismiss.[19] On July 12, 2019, Plaintiffs filed a response to the motion to dismiss.[20] Capstone filed a reply on July 26, 2019.[21]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the

---

[15]  *See generally id.*

[16]  *Id.* ¶ 71.

[17]  ECF 22.

[18]  ECF 33.

[19]  *Id.*

[20]  ECF 36.

[21]  ECF 53.

Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296

(11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Plaintiffs argue that, while they were compensated as pieceworkers and received some overtime wages, Capstone nonetheless violated the FLSA by failing to compensate them for all hours worked, including nonproductive time, and failing to calculate and pay them the correct overtime wages. Capstone argues Plaintiffs do not state a claim because it properly calculated and paid Plaintiffs all overtime wages due.

#### a.    The Fair Labor Standards Act

Congress enacted the FLSA, codified at 29 U.S.C. § 201 *et seq.*, in 1938 to address "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. The FLSA "establishes certain requirements for employers, including a minimum wage to be paid employees, a maximum number of hours to be worked at a regular pay rate, and a requirement of overtime pay." *Wethington v. City of Montgomery*, 935 F.2d 222, 224 (11th Cir. 1991). A covered employee is entitled to overtime wages for any time worked in excess of 40 hours

in a given workweek. *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007). Employers are required to "pay one and one-half times the 'regular rate' of pay for overtime hours." *Id.* (citing 29 U.S.C. § 207(a)(1)). A claim for unpaid overtime wages has two basic elements: "(1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).

The term "regular rate" is defined "to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). *See also Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("[T]he regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."); *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017) ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."). An employee's "regular rate" must be in excess of the statutory minimum wage. 29 C.F.R. § 778.107.

### b.      Overtime Compensation and Piece-Rate Workers

While the "regular rate" is a "rate per hour," the FLSA does not "require employers to compensate employees on an hourly rate basis." 29 C.F.R. § 778.109. Instead, employers may compensate their employees on a piece-rate basis. *Id.*

*See also* 29 U.S.C. § 207(g). Pieceworkers are compensated a certain amount per job performed—*i.e.*, trailer unloaded—rather than by a fixed hourly rate. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013). Despite this distinction, pieceworkers are still covered by the FLSA and are "entitled to be paid the federal minimum wage for every hour they work, and 1.5 times their regular hourly wage for every hour they work in excess of 40 hours a week." *Id*. *See also United States v. Rosenwasser*, 323 U.S. 360, 362–64 (1945). Courts are clear that employers cannot use a piece-rate compensation system as a proxy to avoid paying their employees full overtime wages. *White v. Integrated Elec. Techs., Inc.*, No. 12-359, 2013 WL 2903070, at *1 n.6 (E.D. La. June 13, 2013). *See also Serrano v. Republic Servs., Inc.*, No. 2:14-cv-77, 2017 WL 2531918, at *9 (S.D. Tex. June 12, 2017) ("In other words, piece rates cannot be used to omit non-production time from the maximum hour requirement or to allow the inclusion of non-production time to bring the hourly rate below the FLSA minimum wage.").

When employers compensate employees on a piece-rate basis, "the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek." 29 C.F.R. § 778.109. According to the DOL's regulation:

> When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week.

29 C.F.R. § 778.111(a).

Once the "regular rate" is determined, "[f]or overtime work the pieceworker is entitled to be paid . . . a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week." *Id.* "[T]he determination of the regular rate of pay is a question of fact, while the appropriate methodology to calculate the total amount owed is a question of law." *Rindfleisch v. Gentiva Health Servs., Inc.*, No. 1:10-cv-3288-SCJ, 2016 WL 4974969, at *7 (N.D. Ga. Jan. 7, 2016).

### c. Discussion

The parties generally agree on the validity and applicability of this framework to pieceworkers. The issue in this case is the proper calculation of Plaintiffs' regular rate of pay. Plaintiffs allege Capstone did not compensate them for nonproductive worktime, but included that nonproductive work time in

calculating their overtimes wages. This allegedly caused Capstone to miscalculate Plaintiffs' regular rate of pay and undercompensate them for their overtime hours.

Plaintiffs point to 29 C.F.R. § 778.318. This DOL bulletin provides that piece-rate employees must be compensated at least the minimum wage for all hours worked in a day, both productive and nonproductive. According to the DOL:

> Some [piecework] agreements provide for payment only for the hours spent in productive work; the work hours spent in waiting time, time spent in travel on the employer's behalf or similar nonproductive time are not made compensable and in some cases are neither counted nor compensated. Payment pursuant to such an agreement will not comply with the [FLSA]; such nonproductive working hours must be counted and paid for.

29 C.F.R. § 778.318(a).

While employers must compensate pieceworkers for nonproductive hours, the parties may agree to compensate the employee for those hours in different ways. For example, the parties can agree up-front that an employee will be compensated at a separate or lower rate (but still above the minimum wage) for nonproductive hours as opposed to productive hours. *Id.* at § 778.318(b). In such a case, "the regular rate is the weighted average of the two rates . . . and the employee whose maximum hours standard is 40 hours is owed compensation at

his regular rate for all of the first 40 hours and at a rate not less than one and one-half times this rate for all hours in excess of 40." *Id.*

Another option provides that the parties may agree a pieceworker's piece-wage is intended to cover both productive and nonproductive hours. *Id.* at §778.318(c). In that case:

> [T]he regular rate . . . will be the rate determined by dividing the total piecework earnings by the total hours worked (both productive and nonproductive) in the workweek. Extra compensation (one-half the rate as so determined) would, of course, be due for each hour worked in excess of the applicable maximum hours standard.

*Id*. For this subsection to apply, "the employer and employees must agree that the piece-rate is intended to compensate for both productive and nonproductive hours." *Geday v. C.U. Emp't, Inc.*, No. CV 12-175 (RMC), 2013 WL 12108060, at *1 (D.D.C. May 24, 2013) (*citing* 29 C.F.R. §§ 778.111(a), 778.318).

If the parties do not have an agreement in place regarding uncompensated time, "the employee would be owed compensation at the regular hourly rate set for productive work for all hours up to 40 and at a rate at least one and one-half times [the productive] rate for hours in excess of 40." *Id*.

As stated above, Plaintiffs allege that, while they were not compensated for nonproductive work time, those hours *were* included in calculating their regular

rate of pay for their overtime wages. Plaintiffs also allege the parties did not have an agreement regarding compensation for nonproductive work time. Capstone does not contend it compensated Plaintiffs for, or executed an agreement regarding, nonproductive work. It instead makes arguments regarding the validity and applicability of the DOL bulletin concerning pieceworker compensation, 29 C.F.R. § 778.318, to the current dispute. The Court addresses the most germane below, but finds none of Capstone's arguments persuasive.

### *i.* **Section 778.318 Is Afforded Persuasive Deference.**

Capstone argues § 778.111 controls over § 778.318 because the former "is an actual regulation, which has undergone notice and comment rulemaking," whereas the latter "is not a regulation and is not entitled to deference."[22] According to Capstone, § 778.318 is "not entitled to any weight beyond its power to persuade."[23]

Capstone is correct that § 778.111 is a DOL regulation that has been subjected to the notice-and-comment rulemaking process. *See* U.S. Dep't of Labor, Wage & Hour Div., Updating Regulations Issued Under the Fair Labor Standards Act, 76 FR 18832-01, at 18833. As such, § 778.111 is entitled to *Chevron* deference.

---

22   ECF 53, at 8.

23   *Id.* at 9 (collecting cases).

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.").

Capstone is also correct that § 778.318 is a DOL bulletin, not a regulation, and has not undergone notice-and-comment rulemaking. Black letter administrative law provides that DOL interpretative bulletins "do not rise to the level of a regulation and do not have the effect of law." *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 135 (3rd Cir. 1999). That does not, however, render § 778.318 entirely superfluous or irrelevant. Rather, interpretive guidance such as § 778.318 is entitled to *Skidmore* deference. *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

Under *Skidmore*, the DOL's interpretation of an issue "merit[s] some deference depending upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Buckner v. Fla. Habilitation Network, Inc.*, 489 F.3d 1151, 1155 (11th Cir. 2007) (*citing Skidmore*, 323 U.S. at 140; *United States v. Mead*, 533 U.S. 218, 226–27 (2001)). "A determination regarding the appropriate level of deference accorded to an

agency regulation is a question of law." *Buckner*, 489 F.3d at 1154. *See also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1268 (11th Cir. 2008) (determining 29 C.F.R. § 778.113(a) is entitled to *Skidmore* deference).

No Eleventh Circuit case has determined the level of deference that should be afforded the DOL bulletin at issue here: § 778.318. Significantly, as more fully explicated below, § 778.318 does not conflict with any other DOL regulation or guidance at issue in this case.[24] Instead, the Court finds this bulletin fills a gap in the comprehensive FLSA administrative scheme and provides persuasive guidance. Thus, the Court finds § 778.318 persuasive and declines Capstone's urging to disregard it.

> ii. **Section 778.111 Does Not Conflict with Section 778.318.**

Capstone asserts Plaintiffs cannot state a claim because § 778.111 provides the sole method for calculating the appropriate overtime compensation for pieceworkers and § 778.318 impermissibly conflicts with § 778.111 because each

---

24   *Infra* Section III.c.ii.

requires a different rate of pay formulation.[25] Contrary to Capstone's characterization, §§ 778.111 and 778.318 do not conflict; rather, they are consistent with and supplement one another according to the factual scenario at hand.

Pieceworkers must be compensated for both productive and nonproductive worktime. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 773 (4th Cir. 2017) ("A piece-rate system is permissible under the FLSA only where the parties agree that all of an employee's hours, including nonproductive hours, are compensated and included in the employee's total working time and where the employer continues to comply with the statute's overtime provisions."); *Olivo v. Crawford Chevrolet Inc.*, 799 F. Supp. 2d 1237, 1241 (D.N.M. 2011) ("There is no set manner in which an employer must pay employees for unproductive time, but the employer must comply with FLSA in whatever way it chooses to compensate its employees.").

---

[25] Capstone also argues § 778.111(a) and § 778.318 conflict because an application of the latter to calculate overtime wages would result in a 2.5 times rate of pay multiplier. This contention is misplaced. Plaintiffs here do not argue for the application of a 2.5 times multiplier. Indeed, no such multiplier exists under the FLSA. Rather, Plaintiffs challenge Capstone's decision not to compensate them for nonproductive time and its chosen method for calculating their regular rate of pay. To the extent Plaintiffs seek unpaid straight-time wages (*i.e.*, gap-time wages) for that nonproductive time, however, no such claim may go forward in this case. *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-BBC, 2011 WL 10069108, at *14 (W.D. Wis. Apr. 11, 2011) (holding that "plaintiffs' claims for straight-time compensation for nonproductive work are not cognizable under the FLSA").

While pieceworkers are paid per job completed, "the overtime compensation due to employees must be computed on the basis of the hourly rate." 29 C.F.R. § 778.109.

If, under the employment agreement, the piece-rate is intended to compensate the employee for both nonproductive and productive hours, then the employer must apply the regular rate of pay computation rules found in § 778.111(a). This is wholly consistent with the first part of § 778.318(b). *Alston v. DirecTV, Inc.*, 254 F. Supp. 3d 765, 792–93 (D.S.C. 2017) ("Subsection (b) sets forth a method for calculating the regular rate and overtime obligations essentially the same as the method set forth [in] § 778.111(a), and the method applies when the parties . . . agree to compensate nonproductive hours worked at a rate which is lower than the rate applicable to productive work.") (internal punctuation omitted).

By contrast, the second part of § 778.318(b) applies only when: (1) the employer and employee do not agree on how the employee will be compensated for nonproductive worktime or (2) the employer does not compensate the employee for any nonproductive time. In these situations, the rate of pay calculation rules in § 778.111(a) are inapplicable. *Thompson v. Capstone Logistics, LLC*, No. 4:15-cv-2464, 2018 WL 560407, at *5 (S.D. Tex. Jan. 25, 2018) (holding

§ 778.318(b) may apply if facts show no understanding existed between employee and employer regarding whether employee would be paid independently for waiting time). Finally, § 778.318(c) applies to the wholly separate scenario where "it is understood by the parties that the other compensation received by the employee is intended to cover pay for [productive and nonproductive] hours."

Here, Plaintiffs allege Capstone did not pay them for nonproductive work time. Plaintiffs additionally contend there was no agreement between the parties regarding the compensation for nonproductive worktime. Nonetheless, Plaintiffs allege Capstone included those nonproductive hours to calculate their regular rate of pay at a lower rate and thereby short them overtime wages.

Although the determination of the appropriate method to calculate a pieceworker's regular rate of pay is generally a question of law, the Court finds that important factual questions, such as whether the parties agreed in advance as to the payment for nonproductive work time, must first be answered. Taking Plaintiffs' allegations in the Complaint as true, which the Court must do at this motion to dismiss stage, Plaintiffs have stated a plausible claim for the miscalculation of overtime wages.

### iii. Capstone's Reliance on *Monroe v. FTS* and a DOL Opinion Letter Does Not Shield It from Liability.

Capstone points to the Sixth Circuit's decision in *Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017), and DOL Opinion Letter No. FLSA 2018-28, to argue it should not be penalized for following what it perceived to be the relevant statutory requirements. Contrary to Capstone's characterization, *Monroe* and the DOL Opinion Letter are not so broad, and it cannot rely on ignorance of the law as an affirmative defense.

With regard to *Monroe*, the Court does not find the case persuasive under these facts. First, the nature of the claims in that case were materially distinct from the issues presented here. Second, the Sixth Circuit did not hold that § 778.111 is the sole method for computing overtime for pieceworkers. Third, and most critically, *Monroe* did not involve allegations that the employer failed to pay its employees for nonproductive work time. Indeed, the Sixth Circuit found that "piece-rate compensation was paid for all hours worked by FTS Technicians, regardless of whether that time was recorded." *Id*. That is simply not the allegation in this case. Thus, the employer in *Monroe* was correct to rely on § 778.111(a), since § 778.318 was not applicable to its factual scenario. Capstone's reliance on *Monroe* here is misplaced.

Capstone's citation to DOL Opinion Letter No. FLSA 2018-28 fares no better. Opinion Letter Fair Labor Standards Act (FLSA), 2018 WL 6839425, at *1. As an initial matter, the Opinion Letter dealt with an employer that compensated its home health aides only for visits with clients, while omitting travel time. *Id*. The Opinion Letter did not concern pieceworkers. Nor did it cite § 778.111 or § 778.318. The Opinion Letter simply reiterated the general requirement that an employer compensate its employees for overtime hours "at least one and one-half times their regular rate of pay for time worked in excess of 40 hours per workweek." *Id*. Notably, the Opinion Letter stated that the employer may have violated the FLSA's overtime requirement because its compensation system miscalculated the regular rate of pay and undercompensated its employees. *Id*. at *2. Contrary to Capstone's contentions, nothing in the Opinion Letter demands dismissal of Plaintiffs' claims here, at this stage.

Finally, Capstone urges that it should not be penalized for following § 778.111 and *Monroe* because it "relied on a reasonable, straightforward interpretation of a complex regulatory scheme."[26] While the FLSA overtime regulations and guidance may be complex—notably accentuated by Capstone's

---

[26] ECF 53, at 20.

attempts to conflate the DOL's guidance—this is not a sufficient basis to dismiss Plaintiffs' plausible claims for relief. Capstone cannot invoke an "ignorance-of-the-law" defense to shield itself from potential liability. This argument is not well taken, particularly since Capstone argued the precise inverse—that § 778.318 provided the applicable standard for calculating pieceworkers' overtime wages—in a recent case involving a similar issue. *Thompson v. Capstone Logistics, LLC*, No. 4:15-cv-2464, 2018 WL 560407, at *4 (S.D. Tex. Jan. 25, 2018) ("In their motion, Defendants correctly state how wages are calculated under 29 C.F.R. § 778.318(c).").

## IV. CONCLUSION

For the foregoing reasons, Capstone's motion to dismiss [ECF 22] is **DENIED.** Capstone shall file its Answer within 14 days after entry of this Order. The parties shall file a revised proposed scheduling order within 14 days after Capstone files its Answer. Discovery shall commence 30 days after Capstone files its Answer.

**SO ORDERED** this the 31st day of March 2020.

                                          Steven D. Grimberg
                                United States District Court Judge